FILED

99 JUN 10 PM 1:34

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUN 10 1999

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GRACE LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 98-BU-1799-S |
| ) | |
| YOUNG MEN'S CHRISTIAN ) | |
| ASSOCIATION, a Corporation, ) | |
| ) | |
| Defendant. ) | |

## Memorandum Opinion

Now before the Court is a motion for summary judgment filed by Defendant, Young Men's Christian Association ("YMCA"), on April 15, 1999. (Doc. 11). The motion is accompanied by a brief and evidence in support of the motion. Plaintiff, Grace Lewis, has filed evidence and submitted a brief in opposition to the motion, and the YMCA has submitted a brief in reply thereto. In addition, the YMCA has filed a motion to strike two exhibits Lewis filed as evidence in opposition to the motion for summary judgment. (Doc. 15). The motions are now ripe for decision, and, upon due consideration, the Court concludes that the motion for summary judgment is due to be GRANTED and the motion to strike is MOOT.

### SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the

court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 820 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Id. See also Resolution Trust Corp. v. Dunmar Corp.,

43 F.3d 587, 599 (11th Cir.) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied, 516 U.S. 817 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

The Court will now proceed to consider the application of the foregoing standards to the evidence presented in this case.

## FACTS[1]

Lewis was employed as an aerobics instructor by the YMCA from approximately April 1988 until August 29, 1995. The YMCA requires that each instructor have a current recognized fitness instruction certificate in order to be eligible to teach classes at its facilities. On August 25, 1995, Lewis delivered a current certification that she purportedly received from

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

the Aerobics Fitness Association of America ("AFAA") to the YMCA's Senior Physical Director, David Henley. Later that same day, Henley learned that Lewis had never been a member of the AFAA and that the card she had submitted actually belonged to someone else. On August 29, 1995, Henley met with Lewis and informed her that she was being taken off the aerobics schedule because of her failure to complete a certification course offered by the YMCA and her act of submitting a false certification card. During the course of an investigation into the discrepancies relating the AFAA certification card she submitted, Lewis demanded that Henley turn over her personnel file that the YMCA maintained on her. When he refused to do so, Lewis took the file from his hand and ran out of the YMCA with it. She later returned it after the YMCA requested her to do so.

After she was removed from the aerobics schedule, Lewis filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the YMCA had discriminated against her on the basis of age. On July 22, 1996, Lewis filed a lawsuit claiming that the YMCA had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. The basis of her claim was that she was discriminated against on the basis of her age due to the fact that two younger employees were not immediately removed from the aerobics schedule when they failed to attend the YMCA certification course. Chief Judge Pointer of this Court, however, granted summary judgment in favor of the YMCA in an unpublished memorandum, holding that Lewis failed to demonstrate that she was treated differently that any similarly situated employee because the two younger employees, unlike Lewis, had arranged with the YMCA to take another certification course and had not submitted a false certification card. Lewis v. YMCA, CV- 96-P-1866-S, Doc. 9 at *3 (N.D. Ala. 1997).

On September 20, 1997, Lewis acquired the necessary certification to be an aerobics instructor at the YMCA. In November 1997, Lewis visited the YMCA's Five Points South branch, a different branch from where she had previously worked. During that visit Lewis was approached by the branch Aerobics Coordinator, Terrie Crain, who recognized Lewis as a

former YMCA aerobics instructor and inquired whether Lewis would be interested teaching a class there. Lewis replied that she was interested and that she had recently been certified. About two days later, on or about November 18, 1997, Lewis returned for a meeting with the branch Executive Director, Phil Noble, at which time she filled out an application and other paperwork. Noble indicated that he was looking forward to working with Lewis and that he would take Lewis's application information and "walk" it by Linda Johnston, who was the personnel manager for the YMCA. On that day, Crain also showed Lewis where to park, where to clock in, and Noble told her that she would start teaching classes the following Thursday.[2]

After her meeting with Noble, however, Lewis was worried at the prospect of Noble contacting Johnston because Johnston had been involved in defending the YMCA against Lewis's ADEA suit and knew that Lewis had submitted a false certification card and taken her personnel file. Lewis called Johnston with hopes that she might receive a second chance, and she asked Johnston to give her a favorable recommendation when contacted by Noble about the Five Points South instructor position. Johnston, however, said she would not be able to give Lewis a favorable recommendation. Lewis directly asked Johnston if it was because of her prior lawsuit, and Johnson admits that she replied, "The lawsuit was probably part of it, but there

---

[2]In its motion to strike (Doc. 15), the YMCA contends that certain evidence submitted by Lewis in opposition to the motion for summary judgment is due to be excluded. In particular, the YMCA objects to Exhibits E and F submitted by Lewis. Exhibit E is a copy of aerobics class schedules for November and December 1997 and January 1998, in which Lewis's name has been handwritten in, indicating that she was scheduled to teach a number of classes. The YMCA claims that these schedules were not listed in Lewis's initial disclosures or otherwise revealed, preventing the YMCA from exploring their authenticity. Exhibit F is an affidavit of Dennis McRee, who was employed by the Downtown Birmingham YMCA branch from 1978 until June 1995. The YMCA seeks to strike this affidavit on hearsay grounds and because Lewis allegedly failed to identify McRee in her initial disclosures or otherwise prior to the close of discovery. Without deciding the merits of the motion, the Court will consider Plaintiff's Exhibits E and F in connection with the summary judgment motion. But because the Court finds that the YMCA's motion for summary judgment is due to be granted, even if the Exhibits are considered, the Court finds that the YMCA's motion to strike is moot.

were other circumstances," Johnston Dep. at 23. Johnson acknowledges that she told Lewis that the lawsuit "was time-consuming and it cost us a lot of effort," id. at 24. But she also explained that "[the reason she couldn't give a favorable recommendation] wasn't just the lawsuit, Grace. It was your history," id., citing to Lewis her falsification of her certification card and her taking of her personnel file without authorization. But Lewis alleges that Johnson also expressly stated, "Grace, under the current circumstances, we can't hire you, you cost the Y and management too much money," Lewis Dep. at 82, and "I can't give you a recommendation based on the previous lawsuit . . . . You have cost us a lot of money and the whole management knows about this." Id. at 198.

After her conversation with Lewis, Johnston was contacted by Noble regarding Lewis's potential employment. And as she told Lewis she would, Johnston gave an unfavorable recommendation on Lewis to Noble. Johnston told Noble that Lewis had exhibited dishonesty by falsifying her certification card and taking her personnel file without permission, and she also advised Noble of Lewis's prior lawsuit against the YMCA. Johnston recommended to Noble that he should not hire Lewis because the YMCA had a policy and practice of terminating employees who falsified documents or who took YMCA property without authorization.

The day before Lewis was to begin teaching aerobics classes at the Five Points South branch, she received a recorded phone message from Noble that he needed to speak with her. She returned his call, and Noble told her that she would not be working at the YMCA. He said: "Linda [Johnston] has recommended that I not hire you. . . . If it was up to me, you could have this job, and I'm new and I've been recommended [not to hire you]." Lewis Dep. at 200-01.

Lewis filed another charge with the EEOC, and on July 13, 1998, she filed the instant action in this Court. She alleges one claim: that the YMCA rescinded its offer of employment in retaliation for her having filed her ADEA suit against the YMCA. The YMCA has now filed a motion for summary judgment.

## CONTENTIONS & ANALYSIS

An employer violates the ADEA if it retaliates against an employee for, among other things, filing a lawsuit alleging that the employer discriminated against her on the basis of age. §29 U.S.C. 623(d) states in pertinent part as follows:

> It shall be unlawful for an employer to discriminate against any of its employees or applicants for employment ... because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

To establish a prima facie case of retaliation under the ADEA a plaintiff must show that he or she 1) engaged in statutorily protected activity; 2) experienced adverse employment action; and 3) a causal link exists between the protected activity and the adverse action. Hargett v. Valley Federal Sav. Bank, 60 F.3d 754, 764 (11th Cir. 1995), citing Hairston v. Gainesville Sun Publishing, 9 F.3d 913 (11th Cir. 1993).

### A. Adverse Employment Action

In the instant case, the YMCA concedes that Lewis's filing of her prior lawsuit alleging age discrimination was statutorily protected activity. The YMCA argues, however, that Lewis cannot prove that she experienced an adverse employment action, because the YMCA contends, she cannot establish that she was actually ever extended a firm offer of employment by Noble. The parties seem to devote significant energies to this issue, with Lewis urging that she was actually hired or at least was extended a firm offer of employment, while the YMCA alleges that Noble was still considering whether or not actually to offer Lewis a job, and he then decided not to rehire her after speaking with Johnston. However, the Court concludes that this exercise is largely academic because if the YMCA failed to rehire Lewis after she applied for the job, on the basis that she filed her ADEA discrimination suit, such would constitute an adverse job action sufficient to sustain her retaliation claim. See Payne v. McLemore's Wholesale and

Retail Stores, 654 F.2d 1130, 1141 (5th Cir. Unit A Sept. 1981)[3] ("Defendant's failure to rehire the plaintiff was undoubtedly an adverse employment action" for purposes of Title VII)[4], cert. denied, 455 U.S. 1000 (1982). Accordingly, the issue becomes whether Lewis can establish a causal link between the protected activity and the adverse action. In other words, the question is whether Lewis can present sufficient evidence to show that the fact that she had brought her prior ADEA suit was a motivating factor in the YMCA's decision not to rehire her. See e.g., Watkins v. Sverdrup Technology, Inc., 153 F.3d 1308, 1314 (11th Cir. 1998) (stating that an ADEA plaintiff bears the ultimate burden of proving that an impermissible consideration was "a determining factor" in the adverse employment decision).

B. Direct Evidence of a Retaliatory Motive on the Part of a Decisionmaker

In order to prove a retaliatory motive on the part of the YMCA, Lewis may rely upon either direct or circumstantial evidence. "Direct evidence" is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997) (citations omitted). Thus, direct evidence relates to actions or statements of the employer reflecting discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the

---

[3] In Bonner v. City of Prichard, 661 F.2d 1106 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981. See Limelight Productions, Inc., v. Limelite Studios, Inc., 60 F.3d 767, 769 n. 1 (11th Cir. 1995). Thus, such decisions are binding on this Court.

[4] Although Payne involved a retaliation claim brought under Title VII rather than the ADEA, "'[t]he Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1530 n.4 (11th Cir. 1997) (quoting Hairston, 9 F.3d at 919 (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)). See also McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 357-58 (1995)("ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.'") (cited in Dominguez v. Tom James Co., 113 F.3d 1188, 1191 (11th Cir. 1997)).

employee. <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 641 (11th Cir. 1998). The United States Court of Appeals for the Eleventh Circuit has recently stated:

> "[D]irect evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor. <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989); <u>see, e.g.</u>, <u>Caban-Wheeler v. Elsea</u>, 904 F.2d 1549 (11th Cir. 1990) (in Title VII race discrimination case brought by a white woman who was terminated from her program director position, statement by decision-maker that the program needed a black director was direct evidence of discrimination). If an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence. <u>Burrell</u>, 125 F.3d at 1393."

<u>Schoenfeld v. Babbitt</u>, 168 F.3d 1257, 1266 (11th Cir. 1999).

In this case, the YMCA asserts that there is no direct evidence that the reason Lewis was not rehired was that she had previously filed her ADEA lawsuit. Lewis argues, however, that there is direct evidence showing just that. Lewis points to the statements of Johnston about why she recommended to Noble that Lewis should not be rehired as an aerobics instructor at the Five Points South branch. Specifically, Lewis alleges that Johnston told her, "I can't give you a recommendation based on the previous lawsuit . . . . You have cost us a lot of money and the whole management knows about this," and "Grace, under the current circumstances, we can't hire you, you cost the Y and management too much money." Indeed, Lewis asked Johnson directly whether she would be recommending that Lewis should not be rehired by the YMCA because of Lewis's prior suit, and Johnston admits that she replied that "it wasn't <u>just</u> the lawsuit" (emphasis added) but that "[t]he lawsuit was probably part of it."

The YMCA seems to concede, and the Court would agree, that Johnston's statements would be direct evidence of retaliatory intent on the part of Johnston. The statements show that Johnston's recommendation that Lewis not be rehired was motivated, at least in part, by

the fact that Lewis had sued the YMCA for age discrimination.[5] See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1190 (11th Cir. 1997) (holding that the decisionmaker's statement to plaintiff that "[y]our deposition [in connection with a sexual harassment case] was the most damning to Dillard's case, and you no longer have a place here at Dillard Paper Company" was direct evidence of retaliatory motivation regarding plaintiff's firing). However, the YMCA argues that Johnston's statements cannot be considered direct evidence of retaliatory intent for the purposes of Lewis's retaliation claim because there is insufficient evidence, the YMCA contends, to indicate that Johnston was a decisionmaker with respect to the YMCA's refusal to rehire Lewis. The YMCA admits that Noble received a recommendation not to rehire Lewis from Johnston. But the YMCA maintains that Noble independently made the final decision, and the YMCA points out that it is undisputed that there is no direct evidence of retaliatory motivation on the part of Noble.

It is true that statements by nondecisionmakers are not direct evidence of an improper motivation on the part of an employer. See, e.g., Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Berman v. Orkin Exterminating, 160 F.3d 697, 701 (11th Cir. 1998); Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997). However, the Court concludes that, although both Noble and Johnston allege that Noble made the ultimate decision alone, there is sufficient evidence to indicate that the actual decision not to rehire Lewis was made, at least in part, by Johnston. First, Lewis alleges that Johnston told her, "Grace, under the circumstances, we can't hire you, you cost the Y and management too much money." Johnston allegedly made this statement even prior to her having been contacted by

---

[5]The Court would note that an employer is subject to liability under Title VII, and presumably the ADEA, for giving an unfavorable recommendation or reference with regard to a former employee in retaliation for the former employee having engaged in protected activity. See, e.g., Bailey v. USX Corp., 850 F.2d 1506, 1509 (11th Cir. 1988). However, Lewis has not alleged that the adverse employment action in this case was that YMCA, via Johnston, gave her a poor job recommendation. Instead, she has alleged that the adverse job action was that YMCA failed to rehire her. Thus, the Court analyzes Lewis's retaliation claim within that context.

Noble, thus suggesting that the decision not to rehire Lewis was a foregone conclusion at that point, regardless of what Noble might decide. And second, Lewis claims that when Noble communicated to her that she would not be working at the YMCA, he told her that "Linda [Johnston] has recommended that I not hire you. . . . If it was up to me, you could have this job, and I'm new and I've been recommended [not to hire you]." The foregoing evidence, if credited, indicates that Johnston was a decisionmaker.[6] Accordingly, the Court concludes that there is direct evidence to support Lewis's ADEA retaliation claim that her prior lawsuit motivated, at least in part, the decision that she not be rehired by YMCA.

### C. Applicability of Price Waterhouse v. Hopkins and the 1991 Civil Rights Act

Nonetheless, the YMCA maintains that even if a factfinder were to credit the evidence indicating that Lewis's prior ADEA lawsuit was a motivating factor in the YMCA's decision to not rehire her, the YMCA claims that the evidence further shows that it unquestionably would have made the same decision absent a retaliatory motive. The YMCA argues that this means that it escapes liability under the rule established by the United States Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). There, the Supreme Court held that in Title VII cases, once the plaintiff establishes an impermissible factor played a motivating part in an employment decision, "'the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [impermissible factor] into account.'" Canup v. Chipman-Union, Inc., 123 F.3d 1440, 1441 (11th Cir. 1997) (quoting Price Waterhouse, 490 U.S. at 258 (plurality opinion)).

---

[6]In addition, where there are several participants in the decision-making process, disparate treatment analysis requires that none of the participants be influenced by an improper bias. Jones v. Gerwens, 874 F.2d 1534, 1541 n.13 (11th Cir. 1989). Thus, even if Noble was a decisionmaker and was not motivated by a retaliatory animus but Johnston was so motivated, Noble's neutrality would not cure Johnston's bias, and Lewis could make out a prima facie case of ADEA retaliation. See id.

However, through the enactment of the 1991 Civil Rights Act, Congress scaled back the "no liability" rule of Price Waterhouse by allowing both a finding of liability against the defendant and limited relief to plaintiffs in at least some mixed motive cases. See Canup, 123 F.3d at 1441-42. First, section 107(a) of that Act, codified at 42 U.S.C. § 2000e-2(m), provides that an unlawful employment practice is established when "the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Next, section 107(b) of the Act, codified at 42 U.S.C. § 2000e-5(g)(2)(B), establishes that if a plaintiff proves a violation of section 107(a), but the defendant proves that it "would have taken the same action in the absence of the impermissible motivating factor," the court may grant declaratory and injunctive relief as well as attorney's fees, although the court may not grant other damages, such as monetary relief or reinstatement or hiring.[7]

Thus, if a jury in this case were to determine at trial that the YMCA was motivated by a retaliatory animus in failing to rehire Lewis but that it would have made the same decision absent that impermissible intent, then under Price Waterhouse itself the YMCA would have no liability at all. On the other hand, if a jury were to make such findings and § 107 of the 1991 Civil Rights Act applied to Lewis's ADEA retaliation claim so as to modify the "no liability" aspect of Price Waterhouse, then the YMCA would not be entitled to summary judgment because the YMCA is potentially subject to liability and Lewis might secure certain limited

---

[7] 42 U.S.C. § 2000e-5(g)(2)(B) states: On a claim in which an individual proves a violation under section 2000e-2(m) of this title and respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

relief.[8] The obvious question, then, is whether § 107 applies to Lewis's ADEA retaliation claim.

It appears that neither the United States Court of Appeals for the Eleventh Circuit nor any United States District Court within this circuit has considered whether § 107 of the 1991 Civil Rights Act applies to claims brought under the ADEA.[9] Other federal courts are split on the issue. Those courts suggesting that § 107 does not apply to ADEA claims largely seem to reason that the 1991 Civil Rights Act amends Title VII, not the ADEA, and that the plain language of § 107 refers to discrimination claims based upon "race, color, religion, sex, or national origin," but not "age," the classification protected under the ADEA. See, e.g., DeMarco v. Holy Cross High School, 4 F.3d 166, 172 (2nd Cir. 1993); Mumaw v. Dollar General Corp., 19 F.Supp.2d 786, *790 (S.D. Ohio 1998); Sanderson v. City of New York, 1998 WL 187834, *3 n.2 (S.D. N.Y. 1998); Nelson v. Shoney's, Inc., 1997 WL 567957, *7 n.2 (E.D. La. 1997); Siwik v. Marshall Field & Co., 945 F.Supp. 1158, 1162 (N.D. Ill. 1996). Those courts suggesting to the contrary appear to have simply assumed that § 107 applies to ADEA claims, likely because of prevalent practice of borrowing Title VII principles in ADEA cases based upon the similarity of the structure and purpose of those acts. See, e.g., Fast v. Southern Union Co., Inc., 149 F.3d 885, 889 (8th Cir. 1998); Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 484 (7th Cir. 1997); Gonzagowski v. Widnall, 115 F.3d 744, *749 (10th Cir. 1997); Mandavilli v. Maldonado, 38 F.Supp.2d 180, 194 (D. P.R. 1999); Dungee

---

[8]But see Canup v. Chipman-Union, Inc., 123 F.3d 1440 (11th Cir. 1997), where the Court held that a plaintiff's failure to obtain any real relief may deprive him of any right to recover attorney fees, especially where the plaintiff's own misconduct was also a motivating factor in his termination.

[9]The United States Court of Appeals for the Eleventh Circuit has held, however, that the Price Waterhouse "no liability" rule, not the "limited liability" rule of § 107(b), is applicable to mixed-motive claims brought under 42 U.S.C. § 1983, see Harris v. v. Shelby County Bd. of Educ., 99 F.3d 1078, 1085 (11th Cir. 1996), and 42 U.S.C. § 1981, see Mabra v. United Food & Commercial Workers Local Union No. 1996, 1999 WL 335393, ___ F.3d ___ (11th Cir. 1999).

v. Northeast Foods, Inc., 940 F.Supp. 682 (D. N.J. 1996). See also 2 Lex K. Larson, Employment Discrimination, § 35.04[1] (2nd ed. 1995).

However, even if this Court were to agree with the cases finding § 107 does apply to claims under the ADEA based upon an analogy to Title VII,[10] such would still not necessarily suggest that § 107 applies to Lewis's claim here, which is based not upon alleged age discrimination but, rather, upon alleged retaliation for having engaged in activity protected under the ADEA. On its face, § 107(a) establishes as unlawful an employment practice that is motivated by discrimination based upon "race, color, religion, sex, or national origin," even if other reasons also motivated the practice. Section 107(a) simply does not speak to retaliation based upon activity that is protected under Title VII, such as filing either an EEOC charge or a discrimination lawsuit. And § 107(b), which allows a finding of liability and the awarding of limited relief, states that it applies to claims where a violation is proven under § 107(a). Thus, the applicability of § 107(b) would seem to be co-extensive with that of § 107(a). Nonetheless, the United States Court of Appeals for the Eleventh Circuit has in dicta assumed the propriety of the application of § 107 to a Title VII retaliation claim, although the Court did not apply § 107 in that case. See Merritt, 120 F.3d at 1191. However, the four United States Courts of Appeals that have directly considered the issue have unanimously agreed that, based upon its plain language, § 107 does not apply to Title VII retaliation claims. See Kubicko v. Ogden Logistics Serv., 1999 WL 364836, No. 97-2527, ___ F.3d ___, ___ n.7 (4th Cir. June 7, 1999); McNutt v. Board of Trustees of the Univ. of Illinios, 141 F.3d 706, 709 (7th Cir. 1998); Woodson v. Scott Paper Co., 109 F.3d 913, 933-35 (3rd Cir.), cert. denied, 118 S.Ct. 299 (1997); Tanca v. Nordberg, 98 F.3d 680, 685 (1st Cir. 1996), cert. denied, 520 U.S. 1119 (1997). The Court finds these authorities persuasive. Clearly, if § 107 does not effect Title VII retaliation claims, it would not reach ADEA retaliation claims. The Court holds, therefore,

---

[10] See note 4, supra.

that § 107 does not apply to Lewis's claim in the instant action because § 107 does not apply to retaliation claims. Alternatively, the Court finds that § 107 is inapplicable here because it does not apply to ADEA claims.

Since § 107 of the 1991 Civil Rights Act does not apply to this case, it is governed by the Supreme Court's decision in Price Waterhouse, which would allow the YMCA to escape liability completely if it can establish that it would have made the same employment decision absent a retaliatory motivation. At the summary judgment stage, however, the employer can prevail under the rule in Price Waterhouse only if there is no genuine issue of fact but that the employer would have made the same employment decision even absent the discriminatory motive. Burns v. Gadsden State Community College, 908 F.2d 1512, 1519 (11th Cir. 1990); see also Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1085 (11th Cir. 1996) ("From the facts presented in this summary judgment record, it is clear that Elliott's qualifications are sufficiently superior to those of Harris that no juror could conclude that Rogers would not have made the same decision absent discriminatory intent.")

The Court concludes that no reasonable finding could be made from the summary judgment evidence presented but that the YMCA would have made the same decision not to rehire Lewis even absent a retaliatory motive: Lewis admits both that she submitted a false certification card and that she took her personnel file without permission, from a supervisory employee, no less. She also admits that those acts were wrongful. The evidence is undisputed that the YMCA has policies that employees who submit false documentation or take YMCA property without authorization are to be terminated. Indeed, the YMCA took Lewis off the aerobics schedule because, among other reasons, she submitted a false certification card. There is no reason to believe that the YMCA would not consider that very same misdeed to be independent grounds for denying Lewis's rehire as well as for her initial termination. In addition, it appears that the incident in which Lewis took her personnel file without permission occurred after she was initially removed from the aerobics schedule, giving the YMCA even

more reason not to rehire Lewis than it had to initially take her off the schedule. Thus, because the evidence shows the YMCA would have made the same employment decision, even absent considerations of Lewis's ADEA suit, the YMCA escapes liability under the rule of Price Waterhouse and is entitled to summary judgment in this case.

## CONCLUSION

Based on the foregoing, the Court concludes that there are no genuine issues of material fact and the YMCA is entitled to judgment as a matter of law. Lewis presented sufficient evidence to allow findings that the YMCA subjected her to an adverse employment action and that Johnston was a decisionmaker. Lewis also presented direct evidence that Johnston's decision was motivated, at least in part, by the fact that Lewis had filed a prior ADEA suit against the YMCA. However, the Court concludes that § 107 of the 1991 Civil Rights Act does not apply to Lewis's ADEA retaliation claim asserted here and that under the Supreme Court's decision in Price Waterhouse, the YMCA has no liability because the evidence shows that there is no genuine issue of fact but that the employer would have made the same employment decision even absent the retaliatory motive. The YMCA's motion for summary judgment (Doc. 11) is therefore due to be GRANTED and the case is due to be dismissed with prejudice. Because the motion for summary judgment will be granted, the Court determines that the YMCA's motion to strike (Doc. 15) is MOOT. See note 2, supra.

DONE and ORDERED this 10th day of June 1999

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE